In the Matter of STANLEY R. CLAFFY, Petitioner, against BOARD OF SUPERVISORS OF LEWIS COUNTY et al., Respondents.

Supreme Court, Special Term, Lewis County, July 19, 1948.

*S. J. Mauhs* for petitioner.

*Clark L. Chase* for respondents.

MALPASS, J. The petitioner herein, a Commissioner of Elections of Lewis County, seeks an order "requiring the Supervisors of Lewis County, New York, to Fix and Establish a Uniform Salary to be Paid to the Commissioner of Election of Lewis County, New York, which said Order shall be Operative and Affect the Salaries of said Commissioners of Election Commencing January 1, 1947." This proceeding is brought under article 78 of the Civil Practice Act.

It appears that the petitioner was appointed a Commissioner of Elections of the County of Lewis on February 11, 1947, as the representative of the Democratic Party and that he accepted said appointment and took the oath of office on February 21, 1947. It also appears that prior to December 1, 1944, the salaries of the two Commissioners of Elections of the County of Lewis were equal and fixed at the sum of $600 annually and that pursuant to a resolution of the Board of Supervisors passed November 15, 1944, the salary of the Chairman of the Board of Elections was fixed at the sum of $1,200 per year. The chairman of the board was the Commissioner of Elections representing the Republican Party. The effect of this resolution was to provide a salary for the Republican Commissioner of Elections of $1,200 and for the Democratic Commissioner of Elections of $600. On February 11, 1947, the same date that the petitioner was appointed to the office of Commissioner of Elections, the Board of Supervisors passed a resolution as follows: "Resolved: That the salary of the Republican member of the Board of Elections of Lewis County be and the same hereby is fixed at the sum and amount of One Thousand and Five Hundred Dollars ($1500.00) per annum." The discrepancy in these salaries is claimed to have been justified by reason of the fact that the Republican Commissioner of Elections gave more time to the performance of her duties than was given by the Democratic commissioner and appears to have been acquiesced in by the Democratic Commissioner of Elections, who held that office prior to the appointment of the petitioner. It appears that the petitioner had full knowledge of the difference between the salary paid to the Democratic Commissioner of Elections and that paid to the Republican commissioner and that he accepted his appointment and continued in the office accepting and receiving as his salary the sum of $600 per annum until some time after his appointment and that subsequently the petitioner appeared before the Board of Supervisors at a meeting of said board held March 9, 1948, and requested that the salaries of

the two Commissioners of Elections be equalized. At this meeting held March 9, 1948, the Board of Supervisors entertained and passed a motion, '' that the pay and work of the Commissioners of Elections be equalized.'' This motion was rescinded at a later meeting of the board held April 13, 1948, and a motion that the salary of the Democratic Commissioner of Elections of Lewis County be fixed at the sum of $1,500 was defeated. A resolution fixing the salaries of each Commissioner of Elections at the sum of $1,200 per annum was introduced at the session of the Board of Supervisors held May 11, 1948. This motion was not acted upon but was placed on the table for consideration at the meeting of the board to be held June 1, 1948. The amounts of the above salaries have been added to by the granting of certain increases due to the increased cost of living which are not, for the purpose of this decision, material or relevant and, therefore, will not be considered. The sole question to be determined is, in my opinion, as to whether or not the Board of Supervisors of Lewis County had any legal authority to provide a greater salary for one of the two Commissioners of Elections than it granted to the other.

Section 8 of article II of the State Constitution is as follows: '' All laws creating, regulating or affecting boards or officers charged with the duty of registering voters, or of distributing ballots to voters, or of receiving, recording or counting votes at elections, shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and the next highest number of votes. All such boards and officers shall be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the legislature may direct. Existing laws on this subject shall continue until the legislature shall otherwise provide. This section shall not apply to town, or village elections.'' (Formerly § 6. Renumbered and amended by Constitutional Convention of 1938 and approved by vote of the people November 8, 1938.)

This section of the constitution controls the enactment of ''All laws creating, regulating or affecting '' election boards or officers and requires that such laws '' shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and next highest number of votes.'' This section applies to the office of commissioner of election. In *Mat-*

*ter of Thomas* v. *Wells* (288 N. Y. 155) Judge LOUGHRAN, writing for a unanimous court, said in the last sentence of the opinion, on page 157, " Under the circumstances, we have no function but to point out the command of the Constitution of the State that Boards of Supervisors are to secure bi-partisan Commissioners of Elections in the manner prescribed by the statute." (N. Y. Const., art II, § 8. See *Matter of Kane* v. *Gaynor,* 144 App. Div. 196, 206, 207, affd. 202 N. Y. 615.)

This section of the Constitution of the State requires that all laws creating, regulating or affecting election boards or officers shall secure *equal* representation of the two dominant political parties and this would, in my opinion, require that the representatives of these political parties should possess equal powers and equal duties and should receive equal compensation.

The Legislature has recognized and given force and effect to the constitutional requirements in the enactment of article 3 of the Election Law which provides for the appointment of commissioners of election in the several counties of the State. In section.36 of article 3 of the Election Law it is provided: " it being the intention of this article, and said intention is hereby declared, to secure in the appointment of the *members* and employees of the board of elections *equal* representation of the two political parties which at the general election next preceding such appointment cast the highest and the next highest number of votes for governor."

In pursuance of this intention the Legislature enacted section 33 of this same article of the Election Law in which it fixed the salaries of certain commissioners of elections and delegated to boards of supervisors the power to fix such salaries in other counties. Section 33 of the Election Law is as follows: " *Salaries of commissioners of elections.* Each commissioner of election in the city of New York shall receive a salary of twelve thousand dollars a year, payable by the city. Each commissioner of election in the county of Schenectady shall receive a salary of three thousand dollars, payable by such county. Each commissioner of election outside of such city and the county of Schenectady shall receive from the county an annual salary to be fixed by the board of supervisors." (As amd. L. 1945, ch. 573, eff. April 5, 1945, and by L. 1948, ch. 199, eff. March 11, 1948.)

My attention has not been called to any adjudicated case where this question has been decided nor has my own research disclosed any such decision. The Attorney-General has held that

town boards shall provide equal salaries for the several justices of the peace in a town. (51 N. Y. St. Dept. Rep. 353, 354.)

The Election Law prescribes the duties and powers of commissioners of election and the board of supervisors has no power to enlarge or limit the powers or duties of such officer. Both commissioners have equal powers and must perform equal duties. In the event either commissioner is delinquent in the performance of the duties of his office with the result that the other commissioner is required to give extra time and effort to maintain the office, the remedy is not to pay the faithful commissioner a larger salary for his or her efforts but rather to seek removal from office of the delinquent commissioner. Subdivision 4 of section 30 of the Election Law provides that "A Commissioner of Elections may be removed from office by the governor for cause in the same manner as a sheriff."

The respondent, Charles T. Taylor, as County Treasurer, has objected to the service of the show cause order upon the ground that service was made upon the deputy county treasurer of Lewis County and not personally upon the County Treasurer. The order to show cause provided that service might be made on the County Treasurer by serving the same upon him, his deputy or the County Attorney of Lewis County. Service upon the deputy county treasurer, in my opinion, was sufficient.

The petitioner has interposed numerous objections to the answer filed by the respondents, having objected to the verification thereof by the attorney for said respondents as insufficient and improper. The objection, in my opinion, is not well taken and the answer consisting as it does of certified copies of official records and sworn affidavits should be and is permitted to stand as a properly verified answer.

The petitioner made many motions for an order to strike out certain portions of the answer, upon which motions decision was reserved. All of these motions are denied.

The petitioner seeks an order not only requiring the Board of Supervisors of Lewis County to fix and establish a uniform salary to be paid to the Commissioners of Elections of that county, but also seeks to have said salary retroactive from January 1, 1947, and seeks to have said order provide that the County Treasurer of Lewis County " pay to the petitioner a sum equal to the difference between that which the petitioner has received and that which the petitioner is entitled to receive by the terms of said order, or in the alternative, requiring the county treasurer of the County of Lewis to commence an action

for and in behalf of the County of Lewis and against the respondent, Retta R. Blackmon individually to recover from said respondent a sum equal to the difference between that which said respondent has received and that which said respondent is entitled to receive by the terms of said order."

The petitioner seems to be laboring under the impression that this court has the power by an order to fix and determine the salary to be paid to the Commissioner of Elections for Lewis County. This the court cannot do. The power to fix the salary of the Commissioners of Elections is reposed by the statute in the Board of Supervisors and the most that this court can do is to order and direct that the Board of Supervisors fix a salary equal in amount for each commissioner regardless of the political party which they represent on the Board of Elections.

It is doubtful whether or not the petitioner, after having received and accepted as his compensation, the salary at the rate of $600 per year, would be entitled to recover any additional amount as salary for such period as he has already been paid (*Wintersteen* v. *City of New York,* 220 N. Y. 57), and for the same reason it is doubtful whether the county could recover from the respondent, Blackmon, any moneys paid to her as salary in excess of the $600 per annum fixed by the supervisors prior to its action increasing her salary by the resolutions of November 15, 1944, and February 11, 1947.

An order may be entered herein granting the prayer of the petitioner to the extent of directing the Board of Supervisors of the County of Lewis to fix the salary of each Commissioner of Elections of said county at an equal amount but denying the prayer of the petitioner in other respects, with costs to the petitioner in the amount of $50.