Robert W. Sloan, J.
In this article 78 proceeding petitioner seeks a declaration that two full-time employees of the Election Board of. the County of Cortland, holding the same positions and doing the same work, and representing the two major polit *596 ical parties, must receive the same salary regardless of the political party they represent or the number of years they have been employed in such positions.
The petition is made by only one of the two Election Commissioners comprising the Cortland County Election Board. He may not by unilateral decision and action thus represent the Election Board in his official capacity, and there are no other allegations stated in the petition to give him the right to bring the proceeding. However, it is to be assumed that he is a citizen, a taxpayer and enrolled in the political party he represents by virtue of having been certified to the position by the proper political authority and thereupon appointed an Election Commissioner by the Cortland County Board of Supervisors. In any event, his status as a petitioner is not seriously questioned by the respondents and the problems presented are of such importance that an answer should be given without resort to technical avoidance.
For some years prior to January 1, 1970 the Board of Supervisors made provision for two full-time clerks in the office of the Board of Elections, with equal salaries. Of course, one was and now is an enrolled Democrat and the other an enrolled Republican.
By the provisions of a contract negotiated and entered into prior to the return date of this proceeding between the County of Cortland and the Cortland County Chapter of the Civil Service Employees Association, Inc., representing county employees, including those in the election office, which became effective January 1, 1970 and terminates December 31, 1971, a basic pay schedule, with annual increments up to and including the sixth year of employment was agreed upon, and will be paid to employees filling the positions enumerated on a schedule attached to and made a part of the agreement. For the position of election clerks it provides for a minimum salary of $4,300 with annual increments of $170 per year for five years, at which time the maximum of $5,150 is reached. The longevity payments beginning the ninth year of employment are of no present concern.
It so happens that on January 1,1970 one of the election office clerks will have completed three years of service and be entitled to her base pay ($4,300) plus four increments ($680) for a total of $4,980. The other will have completed two years of service and be entitled to her base pay ($4,300) plus two increments ($340) for a total of $4,640. In 1972 both clerks will have completed at least five years of service and will receive exactly the same pay.
*597 The petitioner refers to section 8 of article II of the New York State Constitution and section 36 of the Election Law, both of which require equal representation of the two major political parties on Election Boards and the employees thereof, as equating equal representation with equal salaries for employees, and this whether the salaries be more or less than those assigned to the two clerks by the agreement in question. Matter of Claffy v. Board of Supervisors of Lewis County (193 Misc. 449) relied on by petitioner, throws no light on the subject at hand. The thrust of that decision is found in the reference to section 33 of the Election Law which then (1948) as now expresses the clear legislative intent that Commissioners of Elections outside of the city or cities named, should receive equal pay, the amount of which is left to the determination of the Board of Supervisors. The crux of and the answer to the problem there dealt with are summarized as follows (p. 453): “ The Election Law prescribes the duties and powers of commissioners of election and the board of supervisors has no power to enlarge or limit the powers or duties of such officer. Both commissioners have equal powers and must perform equal duties. In the event either commissioner is delinquent in the performance of the duties of his office with the result that the other commissioner is required to give extra time and effort to maintain the office, the remedy is not to pay the faithful commissioner a larger salary for his or her efforts but rather to seek removal from office of the delinquent commissioner. Subdivision 4 of section 30 of the Election Law provides that ‘ a Commissioner of Elections may be removed from office by the governor for cause in the same manner as a sheriff.’ ”
In view of more recent constitutional and statutory provision, Claffy and the opinions of the State Comptroller (12 Op. St. Comp., 1956, p. 96) which apply it, are entitled to little or no weight on the question here considered, or even whether, assuming an equal basic salary, annual increments can be granted to Election Commissioners with disparity in salary resulting. Article IX and section 14 of article XIII of the New York State Constitution, effective January 1, 1964, made provision for increased powers in local governments, and empowered the Legislature to confer additional powers. To implement article IX of the Constitution, the Municipal Home Rule Law was enacted and section 201 of the County Law was amended. The latter section provides that the Board of Supervisors shall fix the salary of all officers paid from county funds, and that the salary of any officer elected or appointed for a fixed term shall not be increased or diminished during the term of his office, except that *598 the same may be increased as provided in paragraph h of subdivision 2 of section 24 of the Municipal Home Rule Law, and except as the same may be increased in accordance with a schedule providing higher rates of compensation through additional increments of salary based on time served.
Section 24 (subd. 2, par. h) of the Municipal Home Rule Law provides that a local law shall be subject to referendum on petition if it: “ h. In the ease of a city, town or village increases the salary of an elective officer during his term of office or, in the case of a county, increases the salary of an elective officer or of an officer appointed for a fixed term, during his term of office, except where any such increase by a county is made in accordance with a schedule providing higher rates of compensation through additional increments of salary based on time service, which schedule or applicable amendment thereof was in existence prior to the commencement of such term of office.” (Also, see, 23 Op. St. Comp., 1967, p. 758.)
As to those other than officials elected or appointed for fixed terms, section 205 of the County Law authorizes the Board of Supervisors to fix the salaries of all employees paid from county funds, and in doing so to adopt schedules of compensation with minimum and maximum salaries, and in this manner to provide for .annual increments to the minimum salary so fixed. The two clerks in the office of the Board of Elections are employees paid from county funds and this fixes their status for any authorized action the Board of Supervisors elects to take with reference to salary schedules. Matter of Finegan v. Cohen (275 N. Y. 432 [1937]) directed that the Board of Elections of the City of New York must, under the City Charter, comply with section 6 (now § 8) of article II of the Constitution, and appoint officials to make or assist in the canvass of the vote for Councilmen from each of the two dominant parties. This equal representation is required by the Constitution and section 36 of the Election Law, but the fixing of salaries to be paid from the public purse to officials or employees of a Board of Election is outside their scope and intent, and Matter of Finegan v. Cohen (supra) does not change this result.
Therefore, subject to the limitations contained in the State Constitution (art. XIII, §7) and the cited statutes, the Board of Supervisors has full power to fix salaries, with annual increments, for both elected officials and those appointed for fixed terms, as well as all employees paid from county funds. The fixing of equal salaries with annual increments for the two clerks in the Board of Elections was a proper exercise of this power. It must be noted that the petitioner makes no claim, *599 and none could be made under the circumstances here presented, that the board’s action was from any unworthy motive or a desire to grant political preference.
. In conclusion, it must be noted that under authority granted by the so-called “ Taylor Law” (Civil Service Law, art. 14), the Cortland County chapter of the Civil Service Employees Association, Inc., negotiated the contract for and on behalf of all county employees, including the clerks in the office of the Board of Elections, and the executed agreement became a contract binding on both the employees so represented and the County of Cortland (Civil Service Law, § 201, subd. 13). Under these circumstances, the petitioner, having no personal interest in the agreement, cannot champion the interest of one whose rights have become thus fixed. The petition is dismissed on the merits.